RECEIVED
BY MAIL

DEC 03 2014

CLERK, US DISTRICT COURT
MINNEAPOLIS, MN

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, and STATE OF MINNESOTA | Court File No. 14-sc-3220 (JRT/SER) |
| ex rel. | **AMENDED FALSE CLAIMS ACT COMPLAINT AND DEMAND FOR A JURY TRIAL** |
| Ryan Mesaros (Relator), | |
| Plaintiffs, | **FILED UNDER SEAL AND *IN CAMERA* PURSUANT TO 31 U.S.C. § 3730(b)(2)** |
| v. | |
| CVS Caremark Corporation, CVS Pharmacy, Inc., Caremark, LLC, and Caremark Minnesota Specialty Pharmacy Holding, LLC. | **DO NOT PLACE IN PRESS BOX DO NOT ENTER ON PACER OR CM/ECF** |
| Defendants. | |

SCANNED
DEC - 3 2014
U.S. DISTRICT COURT MPLS

Plaintiff and Relator Ryan Mesaros, through his attorneys, JOHN A. KLASSEN, P.A., 700 Lumber Exchange, 10 South Fifth Street, Minneapolis, Minnesota 55402, and MULLER & MULLER, P.L.L.C., 3109 West 50th Street, Suite 362, Minneapolis, Minnesota 55410, states and alleges as follows:

**NATURE OF CLAIM**

1.      Ryan Mesaros, Pharm.D. ("Relator") brings this action on behalf of the United States of America and the State of Minnesota against Defendant CVS Caremark Corporation, CVS Pharmacy, Inc., Caremark, LLC, and Caremark Minnesota Specialty Pharmacy Holding, LLC ("Defendants") for damages and civil penalties arising from Defendants' violations of the False Claims Act, 31 U.S.C. §§ 3729 to 3733, and the Minnesota False Claims Act, Minn. Stat. §§ 15C.01 et seq. (hereinafter referred to jointly as the "False Claims Acts").

2.　　While transacting business in Minnesota, Defendants have (as described in further detail below) engaged in and continue to engage in the following unlawful conduct in violation of the False Claims Acts:

a.　Defendants have submitted or caused to be submitted claims to Medicaid for "non-covered" pharmaceutical goods and services for which they were expressly prohibited from seeking reimbursement under State of Minnesota regulations governing Medicaid and Medical Assistance;

b.　Defendants continue to submit or cause to be submitted claims to Medicaid for "non-covered" pharmaceutical goods and services for which they are expressly prohibited from seeking reimbursement under State of Minnesota regulations governing Medicaid and Medical Assistance;

c.　Defendants have submitted or caused to be submitted claims to Medicaid for "non-covered" services, involving dispensing of pharmaceuticals to patients that resulted in the provision of excessive prescriptions and waste of government monies and resources, for which they were expressly prohibited from seeking reimbursement under State of Minnesota regulations governing Medicaid and Medical Assistance; and

d.　Defendants continue to submit or cause to be submitted claims to Medicaid for "non-covered" services, involving dispensing of pharmaceuticals to patients that result in the provision of excessive prescriptions and waste of government monies and resources, for which they are expressly prohibited from seeking reimbursement under State of Minnesota regulations governing Medicaid and Medical Assistance.

3.      Defendants have knowingly, or with deliberate ignorance and reckless disregard of the truth or falsity of information, undertaken actions to implement, condone, and continue the submission of these false claims to the United States Government and the State of Minnesota. As required by the federal False Claims Act, 31 U.S.C. § 3730(b)(2), and the Minnesota False Claims Act, Minn. Stat. §§ 15C.01 et seq., Relator has provided to the Attorney General of the United States, the United States Attorney for the District of Minnesota ("AUSA-MN"), and the State of Minnesota Attorney General statements of all material evidence and information related to this Amended Complaint. These disclosure statements were supported by material evidence known to Relator at the time. Because these statements included attorney-client communications and work product of Relator's attorneys, and were submitted to the United States Attorney General, the AUSA-MN and the State of Minnesota Attorney General in their capacities as potential co-counsel in this litigation, Relator understood and intended this disclosure to be confidential.

4.      Prior to filing this Amended Complaint, on or about July 30, 2014, and again on or about November 5, 2014, pursuant to the False Claims Acts, Relator voluntarily provided the AUSA-MN and the State of Minnesota Attorney General documentary and testimonial evidence supporting the claims asserted herein against Defendants. This evidence included work product of Relator's attorneys, and it was submitted to the United States Attorney General, the AUSA-MN and the State of Minnesota Attorney General in their capacities as potential co-counsel in this litigation. Relator understood and intended this disclosure of evidence to be confidential.

## JURISDICTION AND VENUE

5.      This action arises under the federal False Claims Act, 31 U.S.C. §§ 3729 to 3733, and the Minnesota False Claims Act, Minn. Stat. §§ 15C.01 et seq. This Court has jurisdiction over this case pursuant to 31 U.S.C. §§ 3732(a) and 3730(b) and because Defendants reside, own property, employ individuals, and transact business in this District. This Court also has jurisdiction pursuant to 28 U.S.C. § 1345 and 28 U.S.C. § 1331. The Court has pendant jurisdiction over the state law claims.

6.      Venue is proper in this District pursuant to 31 U.S.C. § 3732(a); the unlawful acts complained of herein took place in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), because at all times material and relevant, Defendants resided, owned property, employed individuals, and transacted business in this District.

## PARTIES

7.      Relator is an adult male who at all times relevant was a resident of Minnesota and a citizen of the United States and of the State of Minnesota. At all times material, Relator was a licensed pharmacist and an "employee" of Defendants. Relator brings this action based on direct, independent, and personal knowledge, except where alleged upon information and belief. Relator is an original source of this information to the United States and the State of Minnesota Governments. He has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided this information to the United States and State of Minnesota Governments before filing this action under the False Claims Acts.

8.      Defendant CVS Caremark Corporation ("Defendant Caremark"), a foreign corporation with its principal place of business in Woonsocket, Rhode Island, was at all times material Relator's employer.  Defendant Caremark employed him at its retail stores throughout Minnesota, where it provides retail pharmacy services to Medicaid patients and beneficiaries. Medicaid is a public assistance program providing for payment of medical expenses for low-income patients, including payment in whole or in part for pharmaceutical goods and services.  Funding for Medicaid is jointly shared by the state and federal governments.

9.      Defendant CVS Pharmacy, Inc. ("Defendant CVS"), a foreign corporation with its principal place of business in Woonsocket, Rhode Island, was at all times material Relator's employer. Defendant CVS is the retail pharmacy division of Defendant Caremark, and it operates over 7,000 stores throughout the United States, including approximately 57 CVS stores in the State of Minnesota. Defendant CVS employed Relator at its retail stores throughout Minnesota, where it provides retail pharmacy services to Medicaid patients and beneficiaries.

10.     Defendant Caremark, LLC, a foreign corporation with its principal place of business in Illinois, and Defendant Caremark Minnesota Specialty Pharmacy Holding, LLC, a Minnesota company, are subsidiary entities of Defendant Caremark and Defendant CVS.

## FALSE CLAIMS ACTS

11.     The United States False Claims Act provides, in pertinent part that:

(a) Any person who (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be

made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; ... or (7) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government,

\*\*\*

is liable to the United States Government for a civil penalty of not less than $5,500 and not more than $11,000, plus 3 times the amount of damages which the Government sustains because of the act of that person....

For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required. 31 U.S.C. § 3729.

12.     Similarly, the Minnesota False Claims Act, provides, in pertinent part that:

(a) A person who commits any act described in clauses (1) to (7) is liable to the state or the political subdivision for a civil penalty of not less than $5,500 and not more than $11,000 per false or fraudulent claim, plus three times the amount of damages that the state or the political subdivision sustains because of the act of that person, except as otherwise provided in paragraph (b):  (1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;  (2) knowingly makes or uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; (3) knowingly conspires to commit a violation of clause (1), (2), (4), (5), (6), or (7);  (7) knowingly makes or uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the state or a political subdivision, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the state or a political subdivision.

For purposes of this section of the Minnesota False Claims Act, the terms "knowing" and "knowingly" mean that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information;

or (3) acts in reckless disregard of the truth or falsity of the information. No proof of specific intent to defraud is required, but in no case is a person who acts merely negligently, inadvertently, or mistakenly with respect to information deemed to have acted knowingly. Minn. Stat. §§ 15C.01 et seq.

## FACTS

13.     Because they are Medicaid providers, Defendants must comply with all state and federal Medicaid requirements, including those relating to medical necessity for treatment, standards of medical care, and the provision of prescription medications and reimbursement of the same.

14.     As Medicaid providers in Minnesota, Defendants must comply with the rules set forth in the Minnesota Health Care Programs' "MHCP Provider Manual – Pharmacy Services", which rules expressly prohibit Defendants from soliciting Medicaid beneficiaries and patients to refill prescriptions by telephone or seeking payment for prescriptions that were refilled in connection with such solicitations.

15.     The regulation, which became effective May 24, 2013, defines automatically refilled prescriptions and prescriptions refilled as a result of a solicitation from a pharmacy provider as "non-covered" services and reads: "MHCP does not allow automatic refills.  Prescription refills are not eligible for payment without an explicit request from a recipient or authorized caregiver.  The pharmacy provider may not contact the recipient in an effort to initiate a refill unless it is part of a good faith effort to assess the recipient's medication regimen."

16.     Relator was employed by Defendants from approximately April 2014 through August 2014.  During this period, he worked at approximately 8 different

pharmacy locations of Defendants in Minnesota including, without limitation: Portland Avenue, Minneapolis; Lake Street, Minneapolis; University Avenue, Fridley; White Bear Avenue, Maplewood; Highway 61, White Bear Lake; County Road E, White Bear Lake, Franklin at Nicollet Avenue, Minneapolis; and Central Avenue, Minneapolis.

17.     Relator observed and has presented to the United States and the State of Minnesota Governments credible evidence that Defendants have engaged in the submission of fraudulent and false claims for reimbursement to Medicaid for "non-covered" services at each of Defendants' 8 pharmacies where he worked.     These fraudulent and false claims practices of Defendants date back to and beyond May 24, 2013, and they continue through the present date.     Upon information and belief, Defendants have engaged in the same submission of fraudulent and false claims for payment to Medicaid at every pharmacy they own and operate in the State of Minnesota, approximately 57 individual pharmacies.

**Systematic Telephone Solicitation of Medicaid Patients to Refill Prescriptions and Submission of Claims for Payment of "Non-Covered" Services**

18.     Subsequent to May 24, 2013 and in direct conflict with the State of Minnesota's prohibition against directly soliciting Medicaid patients to refill prescriptions, Defendants knowingly solicited Medicaid patients by telephone to refill prescriptions, refilled the solicited prescriptions, and submitted claims for payment for these "non-covered" services, knowing that Minnesota's rules for payment precluded the submissions of claims for such "non-covered" services.

19.     Minnesota regulations prohibit Defendants from contacting Medicaid recipients "in an effort to initiate a refill unless it is part of a good faith effort to assess the recipient's medication regimen." Despite being aware of this prohibition, Defendants

8

have knowingly solicited Medicaid patients to initiate refills, refilled the prescriptions they solicited, and submitted claims for payment of these "non-covered" services to Medicaid, all the while knowing that Minnesota's rules for payment precluded the submission of such claims.

20.     On a daily basis, Defendants directed their pharmacy technicians and pharmacists to solicit a list of patients by telephone for refills of their prescriptions. These patients included Minnesota Medicaid patients as well as patients receiving Medicaid benefits through managed care organizations (MCOs). Relator personally witnessed Defendants engage in the unlawful solicitation of Medicaid patients for refills, and subsequent unlawful billing to Medicaid for "non-covered" services, at each of Defendants' pharmacies where he worked.  The purpose of these solicitations was to initiate refills and increase the volume of refilled prescriptions for Medicaid patients; it was not part of an effort to "assess the recipient's medication regimen." Prior to initiating these refills, Defendants made no effort to assess patient medication regimens through pharmacist review or any other means. In fact, some pharmacies of Defendants specifically targeted Medicaid recipients with solicitations for refills of prescription drugs because they were "easy targets" for refills (usually having a co-pay of $1.00 or less).

21.     Relator has personal knowledge of specific examples of Defendants soliciting Medicaid Patients to refill prescriptions, refilling these prescriptions, and billing Medicaid for these "non-covered" prescriptions between May 24, 2013 and the present date.  These instances include, by way of example only and without limitation, the following in-person telephone solicitations: On or about July 19, 2014, at Defendants' pharmacy in Maplewood, Minnesota, on the express instruction of Defendants, a

pharmacy technician employed by Defendants solicited by telephone four Minnesota Medicaid patients to initiate a refill of their prescriptions. These Medicaid beneficiaries had the initials (a) MD; (b) TH; (c) KY; and (d) KG. Upon information and belief, Defendants refilled some or all of these prescriptions that they initiated through their unlawful solicitation. Then, Defendants billed Medicaid for these "non-covered" services and received payment knowing that Minnesota's rules precluded Defendants from submitting claims for payment of such "non-covered" services. On that day, Defendants engaged in the same conduct with respect to other Medicaid beneficiaries and MCO-managed Medicaid beneficiaries.

22.     Relator also has personal knowledge of specific examples of Defendants employing automated telephone solicitations for the purpose of initiating refills of prescriptions of Medicaid patients and billing Medicaid for these "non-covered" prescriptions between May 24, 2013 and the present date. These instances include, by way of example only and without limitation, the following:

a.    On or about June 25, 2014, Defendants placed an "Automated call" from their Maplewood location to solicit a prescription refill for a patient with the initials MH. This individual was a Minnesota Medicaid patient. The prescription for doxazosin mesylate 4 was filled that same day, picked up by the patient on June 26, 2014, and billed to Minnesota Medicaid.

b.    On or about July 14, 2014, Defendants placed an "Automated call" from their Franklin/Nicollet Avenues location to solicit a prescription refill for a patient with the initials JL. This individual was a Minnesota Medicaid patient. This automated call resulted in two prescriptions being filled on

July 17, 2014 for this Medicaid patient (triamterene-hctz 37, and atenolol), which were then picked up by the patient on July 20, 2014, and billed to Minnesota Medicaid.

c.   On or about July 10, 2014, Defendants placed an "Automated call" from their Franklin/Nicollet Avenues location to solicit five prescription refills for a patient with the initials RW. This individual was a Minnesota Medicaid patient. This automated call resulted in one prescription for Gabapentin being filled on July 11, 2014 for this Medicaid patient, which was then picked up by the patient on July 13, 2014, and billed to Minnesota Medicaid.

d.   On or about July 3, 2014, Defendants placed an "Automated call" from their Franklin/Nicollet Avenues location to solicit a prescription refill for a patient with the initials AA.  On or about July 22, 2014, Defendants then placed an "adherence call" or in-person phone call to the same patient. This individual was a Minnesota Medicaid patient. These calls resulted in a prescription for Metformin HCL being filled on July 22, 2014 for this Medicaid patient, the cost of which was billed to Minnesota Medicaid.

e.   On or about July 25, 2014, Defendants placed an in-person adherence call from their Franklin/Nicollet Avenues location to solicit a prescription refill for a patient with the initials TW.  This individual was a Minnesota Medicaid patient.  This call resulted in a prescription for Citalopram HBR being filled on July 25, 2014 for this Medicaid patient, which prescription

was then picked up by the patient, and the cost of which was billed to Minnesota Medicaid.

23.     Defendants billed Minnesota Medicaid for these prescriptions even though they knew they were billing for a "non-covered" service.

24.     The above-described fraudulent telephone solicitation, dispensing, and billing practices of Defendants occurred at each and every one of Defendants' Minnesota pharmacies at which Relator worked. These practices have resulted in Defendants selling, dispensing, and receiving payment from Medicaid for "non-covered" services; namely, prescription medications that were not specifically requested by Medicaid recipients or their treating providers. These practices have also resulted in Defendants failing to provide adequate health care and pharmaceutical services to Medicaid patients in Minnesota. Upon information and belief, these unlawful practices of Defendants occurred, and are still occurring, in every retail pharmacy of Defendants in Minnesota (approximately 57 in all).

25.     During his employment with Defendants, Relator repeatedly reported to his supervisors that he had observed and believed Defendants to be illegally soliciting Medicaid patients by telephone to initiate a refill of their prescriptions.  Defendants ignored Relator's reports outlining their illegal practices and related submission of false claims.

26.     The actions of Defendants described above have resulted in the knowing submission of false claims to the United States and the State of Minnesota Governments.

27.     As a direct and proximate result of Defendants' false claims to Medicaid, and other actions taken in violation of the False Claims Acts, the United States Government and the State of Minnesota have been damaged.

## COUNT ONE
## UNITED STATES FALSE CLAIMS ACT VIOLATIONS
### 31 U.S.C. § 3729(a)(1) and (a)(2)

28.     Relator re-alleges the foregoing paragraphs as though fully set forth herein.

29.     Defendants, by and through their officers, agents, supervisors, owners, directors and employees, knowingly presented or caused to be presented to the United States and the State of Minnesota Governments false claims for payment of services and medications under Medicaid, in violation of 31 U.S.C. § 3729(a)(1).

30.     Defendants, by and through their officers, agents, supervisors, owners, directors and employees, knowingly made, used, or caused to be made or used, false records or statements to get false claims paid or approved by the United States and the State of Minnesota Governments, for payment of services and medications under Medicaid, in violation of 31 U.S.C. § 3729(a)(2).

31.     Defendants, by and through their officers, agents, supervisors, owners, directors and employees, authorized the various officers, agents, supervisors, and employees of Defendants to take the unlawful actions set forth above and below.

32.     Defendants knowingly hid and otherwise failed to disclose to the United States, the HHS, State of Minnesota and other Federal and State agencies that Defendants have been submitting false claims for payment of services and medications under Medicaid.

33.     Defendants falsely represented to the United States Government and the State of Minnesota that the billings Defendants submitted for payment of services and medications under Medicaid were proper, for "covered services," and valid. This resulted in the submission of false claims for "non-covered" services to the United States Government and the State of Minnesota, and the payment to Defendants for "non-covered" services by the United States Government and the State of Minnesota.

34.     Defendants' course of conduct violated the United States False Claims Act, 31 U.S.C. §§ 3729 to 3733.

35.     The United States and the State of Minnesota have been damaged as a result of Defendants' violations of the United States False Claims Act to the extent that the United States and the State of Minnesota, unaware of the falsity of the claims and/or statements of Defendants, and in reliance on the accuracy thereof, made payments for which Defendants were not entitled.

## COUNT TWO
## MINNESOTA FALSE CLAIMS ACT VIOLATIONS
### MINN. STAT. §§ 15C.01 et seq.

36.     Relator re-alleges the foregoing paragraphs as though fully set forth herein.

37.     Defendants, by and through their officers, agents, supervisors, owners, directors and employees, knowingly presented or caused to be presented to the United States and the State of Minnesota Governments false claims for payment of services and medications under Medicaid, in violation of Minn. Stat. §§ 15C.01 et seq.

38.     Defendants, by and through their officers, agents, supervisors, owners, directors and employees, knowingly made, used, or caused to be made or used, false

records or statements to get false claims paid or approved by the United States and the State of Minnesota Governments, for payment of services and medications under Medicaid, in violation of Minn. Stat. §§ 15C.01 et seq.

39.     Defendants, by and through their officers, agents, supervisors, owners, directors and employees, authorized the various officers, agents, supervisors, and employees of Defendants to take the unlawful actions set forth above and below.

40.     Defendants knowingly hid and otherwise failed to disclose to the United States, the HHS, State of Minnesota and other Federal and State agencies that Defendants have been submitting false claims for payment of services and medications under Medicaid.

41.     Defendants falsely represented to the United States Government and the State of Minnesota that the billings Defendants submitted for payment of services and medications under Medicaid were proper, for "covered services," and valid. This resulted in the submission of false claims for "non-covered" services to the United States Government and the State of Minnesota, and the payment to Defendants for "non-covered" services by the United States Government and the State of Minnesota.

42.     Defendants' course of conduct violated the Minnesota False Claims Act, Minn. Stat. §§ 15C.01 et seq.

43.     The United States and the State of Minnesota have been damaged as a result of Defendants' violations of the Minnesota False Claims Act to the extent that the United States and the State of Minnesota, unaware of the falsity of the claims and/or statements of Defendants, and in reliance on the accuracy thereof, made payments for which Defendants were not entitled.

## PRAYER FOR RELIEF

**WHEREFORE,** Relator, on behalf of himself and the United States and the State of Minnesota, respectfully prays:

A.      That this Court enter judgment against the above-named Defendants in an amount equal to three times the amount of damages the United States and the State of Minnesota has sustained because of Defendants' actions;

B.      That this Court impose on Defendants a civil penalty of $5,500 to $11,000 for each action in violation of 31 U.S.C. §§ 3729 et seq. and Minn. Stat. §§ 15C.01 et seq.;

C.      That this Court order Defendants to pay the costs of this litigation, with interest, incurred by both the Relator and the United States and the State of Minnesota;

D.      That the Relator be awarded all costs incurred, including reasonable attorneys' fees;

E.      That, in the event the United States and/or the State of Minnesota continues to proceed with this action, the Relator be awarded an amount for bringing this action of at least 15% but not more than 25% of the proceeds of the action or settlement of the claim;

F.      That, in the event the United States and/or the State of Minnesota does not proceed with this action, the Relator be awarded an amount that the Court decides is reasonable for collecting the civil penalty and damages, which shall be not less than 25% nor more than 30% of the proceeds of the action or settlement of the claim;

G.      That the United States, the State of Minnesota and the Relator be awarded prejudgment interest; and

H.    That the United States, the State of Minnesota and the Relator receive all relief, both in law and in equity, to which they may reasonably appear entitled.

### JURY DEMAND

Relator, on behalf of himself and the United States and the State of Minnesota, hereby demands a trial by jury of all issues triable of right by a jury.

Date:  December 2, 2014

**JOHN A. KLASSEN, PA**

John A. Klassen (No. 24434X)
700 Lumber Exchange Building
10 South Fifth Street
Minneapolis, MN 55402
(612) 204-4533
john@jaklaw.com

**MULLER & MULLER, PLLC**
Andrew P. Muller (No. 32467X)
3109 West 50th Street, No. 362
Minneapolis, MN 55410-2102
(612) 604-5341
apmuller@themullerlawfirm.com

**ATTORNEYS FOR PLAINTIFF AND RELATOR RYAN MESAROS**